IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITIZENS FIRST NATIONAL BANK, | ) | |
| A National Banking Association | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARTMANN PROPERTIES, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| And | ) | No. 08 C 1642 |
| | ) | |
| PENSION BENEFIT | ) | |
| GUARANTY CORPORATION, A | ) | |
| Government Corporation, | ) | |
| | ) | |
| Cross-Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| HARTMAN PROPERTIES, LLC, | ) | |
| An Illinois Limited Liability Company; | ) | |
| CONSOLIDATED FREIGHTWAYS | ) | |
| CORPORTATION OF DELAWARE, | ) | |
| A Delaware Corporation; MID-STATES | ) | |
| EXPRESS, INC., An Illinois Corporation; | ) | |
| UNKNOWN OWNERS and | ) | |
| NON-RECORD CLAIMANTS, | ) | |
| | ) | |
| Cross-Defendants. | ) | |

## COUNTERCLAIM OF THE PENSION BENEFIT GUARANTY CORPORATION

The United States of America, by Patrick J. Fitzgerald, United States Attorney for

the Northern District of Illinois, on behalf of the Pension Benefit Guaranty Corporation

(the "Counter-Plaintiff" or the "PBGC") seeks the entry of a judgment of foreclosure and

sale.   Pursuant to 735 ILCS § 5/15-1504(h), the Counter-Plaintiff opts to have its

counterclaim stand in lieu of an answer to the Plaintiff's complaint for foreclosure,

including any amendment, and all other party's counterclaims, previously or hereafter filed. Except to the extent that Counter-Plaintiff admits any of the allegations of any complaint or counterclaim, it denies or lacks information with which to admit or deny the allegations.

1.    Jurisdiction over this Counterclaim is conferred upon the district court by 28 U.S.C. § 1345 and 29 U.S.C. § 1303(e).

2.    Counter-Plaintiff is a wholly-owned United States government corporation established under 29 U.S.C. § 1302(a) to administer the defined benefit pension plan termination insurance program created by Title IV of the Employee Retirement Income Security Act of 1974 (as amended, "ERISA"), 29 U.S.C. §§ 1101-1461.

3.    Counter-Plaintiff files this Counterclaim to foreclose the mortgage, trust deed or other conveyance in the nature of a mortgage hereinafter described, and joins the following persons as Counter-Defendants: Hartmann Properties, LLC., an Illinois limited liability corporation; Consolidated Freightways Corporation of Delaware, a Delaware Corporation; Midstates Express, Inc., an Illinois Corporation ("Midstates Express"); Unknown Owners; and Non-record Claimants.

4.    Attachments. Attached hereto, as Exhibit "A," is a copy of a document entitled Mortgage, in which Hartmann Properties, LLC. granted a mortgage to Counter-Plaintiff (the "Mortgage") to secure payment of all indebtedness of Midstates Express to the MidStates Express Employees' Pension Plan and Trust (the "Plan") to the extent of $2,300,000, which includes (i) the outstanding balance of the minimum funding waiver granted MidStates Express by the Internal Revenue Service (the "IRS") for the Plan Year ending December 31, 2003 (the "Waiver"), and (ii) the outstanding amount of missed

2

contributions required to be made to the Plan in accordance with 26 U.S.C. § 412(n), plus

interest, costs, reasonable attorneys' fees, and other costs of collection, and including

other obligations that may arise under said mortgage. *See* Exhibit A, p.1.  As a condition

of granting the Waiver, IRS required that collateral acceptable to Counter-Plaintiff be

provided to the Plan.  Thus, Hartmann Properties, LLC granted the Mortgage to Counter-

Plaintiff, acting on behalf of the Plan, to secure the indebtedness described above in this

paragraph.

     5.    <u>Information concerning Mortgage:</u>

a)  Nature of instrument:          A real estate mortgage;

b)  Name or names of mortgagor or mortgagors:  Hartmann Properties, LLC.;

c)  Name of mortgagee, trustee or grantee in Mortgage:  Pension Benefit Guaranty
    Corporation;

d)  Date and place of recording:  Mortgage recorded in the Office of the Recorder of
    Deeds of LaSalle County, Illinois on January 26, 2007;

e)  Identification of recording:    Document No. 2007-02083;

f)  Name of mortgagee, trustee or grantee in assignment of Mortgage:  Pension
    Benefit Guaranty Corporation;

g)  Estate conveyed:  Fees simple title conveyed as security;

h)  Amount of original indebtedness:     See paragraph 4 above;

i)  Legal description of mortgaged premises, common address and tax identification:

    PARCEL 1:

THAT PART OF THE SOUTH HALF OF SECTION 31, TOWNSHIP 34 NORTH,
RANGE 1, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING EAST OF
CENTER LINE OF THE PERU AND GRAND DETOUR PLANK ROAD,
DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF
THE SOUTHEAST QUARTER OF SAID SECTION 31; THENCE NORTH 00
DEGREES 27 MINUTED 00 SECONDS EAST ALONG THE EAST LINE OF SAID

SOUTHEAST QUARTER OF SECTION 31 FOR A DISTANCE OF 662.05 FEET TO THE POINT OF BEGINNING; THENCE DUE WEST FOR A DISTANCE OF 2367.16 FEET; THENCE NORTH 31 DEGREES 03 MINUTES 43 SECONDS WEST FOR A DISTANCE OF 100.00 FEET TO THE CENTER LINE OF THE AFOREMENTIONED PERU AND GRAND DETOUR PLANK ROAD; THENCE NORTH 32 DEGREES 43 MINUTES 00 SECONDS WEST ALONG CENTER LINE OF THE PERU AND GRAND DETOUR PLANK ROAD FOR A DISTANCE OF 182.74 DEET; THENCE NORTH 89 DEGREES 54 MINUTES 30 SECONDS EAST FOR A DISTANCE OF 669.17 FEET TO THE WEST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 31; THENCE NORTH 00 DEGREES 38 MINUTES 00 SECONDS EAST ALONG THE WERST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 31 FOR A DISTANCEOF 2648.57 DEET TO THE EAST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 31; THENCE SOUTH 00 DEGREES 27 MINUTED 00 SECONDS WEST ALONG THE EAST LINE OF THE SOUTHEAST QUARTER OF SAID SECTION 31 FOR A DISTANCE OF 900.00 FEET TO THE POINT OF BEGINNING, EXCEPTING THEREFROM THE PORTION CONVEYED TO THE COUNTY OF LASALLE AS DOCUMENT NO. 596481.

PARCEL 2:

A NON-EXCLUSION EASEMENT FOR DRAINAGE PURPOSES FOR THE BENEFIT OF PARCEL NO.1 AS CREASTED BY AGREEMENT BETWEEN MARY A. KASZYNSKI AND PEARL CONUCCI AND CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE DATED 3 MAY, 1979 AND RECORDED 9 JULY 1979 AS DOCUMENT NO. 673028, DESCRIBED AS FOLLOWS:  THAT PART OF THE SOUTH HALF OF SECTION 31, TOWNSHIP 34 NORTH, RANGE 1, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING EAST OF THE CENTER LINE OF THE PERU AND FRAND DETOUR PLANK ROAD DESCRIBED AS FOLLOWS: COMMENCING AT THE SOUTHEAST CORNER OF THE SOUTHEAST QUARTER OF SAID SECTION 31; THENCE NORTH 00 DEGREES 27 MINUTED 00 SECONDS EAST ALONG THE EAST LINE OF SOUTHEAST QUARTER OF SAID SECTION 31 FOR A DISTANCE OF 443.00 FEET; THENCE DUE WEST FOR A DISTANCE OF 2257.91 FEET; THENCE SOUTH 00 DEGREES 23 MINUTES 30 SECONDS WEST FOR A DISTANCE OF 221.54 FEET; THENCE SIUTH 85 DEGREES 42 MINUTES 00 SECONDS WEST FOR A DISTANCE OF 407.66 FEET TO THE NORTHEASTERLY RIGHT OF WAY LINE OF THE AFORESAID PLANK ROAD; THENCE NORTH 32 DEGREES 07 MINUTES 30 SECONDS WEST ALONG SAID NORTHEASTERLY RIGHT OF WAY LINE FOR A DISTANCE OF 13.00 FEET TO AN EXISTING CONCRETE RIGHT OF WAY MARKER; THENCE SOUTH 60 DEGREES 10 MINUTES 00 SECONDS WEST FOR A DISTANCE OF 62.50 FEETO TO THE CENTERL INE OF THE AFOREMENTIONED PLANK ROAD; THENCE NORTH 32 DEGREES 43 MINUTED 00 SECONDS WEST ALONG CENTER LINE OF THE PLAK ROAD FOR A DISTANCE OF 903.08 FEET; THENCE NORTH 57 DEGREES 17 MINUTES 00 SECONDS EAST FOR A DISTANCE 34.49 FEET TO A POINT ON THE AFORESAID NORTHEASTERLY RIGHT-OF-WAY LINE OF THE PLANK ROAD WHICH IS THE POINT OF BEGINNING; CONTINUING THENCE NORTH 57 DEGREES 17 MINUTES 00 SECONDS EAST FOR A DISTANCE OF 65.51 FEET; THENCE NORTH 89 DEGREES 54 MINUTES 30 SECONDS EAST FOR A DISTANCE OF 27.00 FEET; THENCE SOUTH 57 DEGREES 17 MINUTES 00 SECONDS WEST FOR A DISTANCE OF 50 FEET; THENCE SOUTH 17 DEGREES 51 MINUTES 42 SECONDS WEST FOR A DISTANCE OF 49.51 FEET TO THE POINT ON THE AFORESAID NORTHEASTERLY RIGHT-OF-WAY LINE FOR A DISTANCE OF 46.00 FEET TO THE POINT OF BEGINNING; ALL SITUATED IN DIMMICK TOWNSHIP.

ALL SITUATED IN LASALLE COUNTY, ILLINOIS

Common Address: 5005 North Plank Road, Peru, Illinois

Pin: #:11-31-406-000

j) Status of Loan and statements as to defaults: (1) Midstates Express' failure to make contributions to the Plan when due under the Waiver and under the terms of Midstates Express' pension plan, both secured by the Mortgage, (2) Hartmann Properties, LLC's alleged default under the mortgage it granted to Plaintiff, and (3) to the extent, if any, that a recorded, unreleased mortgage on the premises existed in favor of Consolidated Freightways Corporation of Delaware at the time that Hartmann Properties, LLC granted the Mortgage to Counter-Plaintiff, a false representation that nothing else then encumbered the premises other than Plaintiff's mortgage. By reason of these defaults, Counter-Plaintiff has elected to and does hereby declare immediately due and payable the entire principal balance and all other sums secured by the Mortgage. As of October 15, 2007, the balance secured by the Mortgage and due and owing to Counter-Plaintiff is $2,251,618. In addition, Counter-Plaintiff seeks the recovery of all costs and expenses of this action.

k) Name or names of present owner or owners of premises:    Hartmann Properties, LLC;

l) Name or names of persons, in addition to such owner or owners, but excluding any non-record claimants, as defined in the Illinois Mortgage and Foreclosure Act, as heretofore and hereafter amended, who are joined as Counter-Defendants and whose equitable right to redeem is sought to be barred:        None;

m) Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate, if any, is sought to be terminated: Consolidated Freightways Corporation of Delaware, a Delaware Corporation; Midstates

5

Express, Inc., an Illinois Corporation; Unknown Owners; and Non-record Claimants;

n)  Names of defendants claimed to be personally liable for deficiency, if permitted by law:        Midstates Express, Inc.;

o)  That in addition to persons identified herein by name there are other persons who may be interested in this action or who may have some right, title, interest or lien in, to or upon the real estate, or some part thereof, in this Counterclaim described; that the name of each such other person is unknown to Counter-Plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made parties Counter-Defendant to this action by the name and description "Unknown Owners", but the interests of said parties, if any, are subject, inferior, and subordinate to the lien of the Mortgage being foreclosed herein;

p)  That in addition to persons designated by name herein and the unknown defendants herein above referred to there are other persons who may be interested in this action and who may have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, in this Counterclaim described which have been designated herein as: "Non-record Claimants"; that the name of each of such other persons is unknown to Counter-Plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made parties Counter-Defendant to this action by the name and description of "Non-record Claimants", and their interest, if any, is subject, subordinate and inferior to lien of the Counter-Plaintiff's Mortgage being foreclosed herein;

q)  Capacity in which Counter-Plaintiff brings this suit: The Pension Benefit Guaranty Corporation, acting on behalf of the Plan, is the legal owner and holder of the Mortgage herein described and is entitled to all sums due thereunder;

r)  Counter-Plaintiff seeks inclusion of Counter-Plaintiff's attorneys' fees, costs, and expenses in the judgment; and

s)  Counter-Plaintiff asserts its rights of redemption under 28 U.S.C. § 2410.

<u>COUNTER-PLAINTIFF PRAYS</u>:

A.  For the entry of a judgment of foreclosure and sale;

B.  For a finding that Counter-Plaintiff's Mortgage is senior in priority to: Hartmann Properties, LLC.; an Illinois limited liability corporation; Consolidated Freightways Corporation of Delaware, a Delaware Corporation; Midstates Express, Inc., an Illinois Corporation; Unknown Owners; and Non-record Claimants;

C.  For a right of redemption, as provided by 28 U.S.C. § 2410(c);

D.  For a personal deficiency judgment against Midstates Express, Inc., if authorized by law; and

E.  For such other and further relief as may be equitable and just.

PATRICK J. FITZGERALD
UNITED STATES ATTORNEY

By:/s/ Joel R. Nathan
        JOEL R. NATHAN
        Assistant United States Attorney
        2l9 South Dearborn Street
        Chicago, Illinois 60604
        312/353-8449
        Attorney No.2019566

*2007-02083 23*

2007-02083

THOMAS E. LYONS
LASALLE COUNTY RECORDER
OTTAWA, IL
RECORDED ON
01/26/2007     11:34AM

REC FEE:        67.00
RHSP FEE:       10.00
     PAGES:  23

Description is a Copy

**MAIL TO:**

_____

_____

_____

**COVER SHEET**

**(DOCUMENT FORM):** *Mortgage* _____

**Attached by**
**Thomas E. Lyons**
**LaSalle County Recorder**
**For the purpose of affixing Recording Information**

## MORTGAGE

THIS MORTGAGE, dated January _15_, 2007, is given by Hartmann Properties, LLC, an Illinois Limited Liability Company ("Mortgagor"), whose address is 540 W. Galena Boulevard, Aurora, Illinois, to PENSION BENEFIT GUARANTY CORPORATION ("Mortgagee"), a wholly-owned United States government corporation, whose address is 1200 K Street, N.W., Washington, D.C. 20005-4026, who herein acts on behalf, and for the benefit of, the MidStates Express, Inc. Employees' Pension Plan and Trust (the "Pension Plan"). References to this "Mortgage" shall mean this instrument and any and all renewals, modifications, amendments, supplements, extensions, consolidations, substitutions, spreaders and replacements of this instrument.

### Background

A.      Mortgagor is the owner of the parcel(s) of real property located at 5005 North Plank Road, Peru, LaSalle County, Illinois, as more particularly described on the attached Schedule A.

B.      MidStates Express, Inc. ("MidStates") is the sponsor of the Pension Plan, which is a defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, _as amended_ ("ERISA").

C.      MidStates wishes to secure payment of an indebtedness of MidStates to the Pension Plan to the extent of $2,300,000 ("Principal Amount"), which is (i) the outstanding balance of the minimum funding waiver granted MidStates by the Internal Revenue Service by letter dated September 29, 2006 (the "Waiver"), for contributions owed to the Pension Plan for the Plan Year ending December 31, 2003 ("Waiver Balance"), and (ii) the outstanding amount of missed contributions, as of any date prior to the release of this Mortgage, required to be made to the Plan in accordance with section 302 of ERISA, plus interest, costs, reasonable attorneys' fees, and other costs of collection, and including other obligations that may arise under this Mortgage (the "Indebtedness") .

D.      Mr. Bruce Hartmann is Vice President of MidStates and is a shareholder in MidStates.  Mr. Hartmann together with his four brothers and his parents own all of the ownership interests in MidStates.  Mr. Hartmann is also a managing member of the Mortgagor. Mr. Hartman together with his four brothers own all of the ownership interests in the Mortgagor.

E.      Pursuant to a commercial mortgage dated August 22, 2001 (the "First Mortgage"), Mortgagor has granted to Citizens First National Bank (the "First Mortgagee") a commercial mortgage in the Mortgaged Property (as defined below) and certain property and rights and interests relating thereto (which property and rights and interests are described more fully in the Granting Clauses hereof).

1

F.    Among other security that will be provided on behalf of Midstates to PBGC, Mortgagor has agreed to grant a second mortgage lien on the Mortgaged Property (as defined below) to secure payment of the Indebtedness. This Mortgage is subordinate only to the mortgage of the First Mortgagee.

Granting Clauses

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

MORTGAGOR HEREBY mortgages and warrants to Mortgagee the real property described in Schedule A which is attached to this Mortgage and incorporated herein together with all future and present improvements and fixtures; privileges, hereditaments, and appurtenances; leases, licenses and other agreements; rents, issues and profits; water, well, ditch, reservoir and mineral rights and stocks, and standing timber and crops pertaining to the real property (collectively, the "Mortgaged Property").

TO HAVE AND TO HOLD the Mortgaged Property and the rights and privileges hereby mortgaged, together with the right to retain possession of the Mortgaged Property after a default or Event of Default hereunder, unto Mortgagee, its successors and assigns for the uses and purposes set forth, until this Mortgage is released pursuant to Section 32 hereof.

THIS MORTGAGE secures payment of the Indebtedness to the Pension Plan, but the maximum principal amount of indebtedness secured by this Mortgage, or which by any contingency may be secured hereby is the Principal Amount stated in paragraph C above.

Terms and Conditions

Mortgagor further represents, warrants, covenants and agrees with Mortgagee as follows:

1.    Warranty of Title.

Mortgagor warrants that Mortgagor has good record title to the Mortgaged Property in fee simple, subject only to the First Mortgage. Mortgagor shall warrant, defend and preserve such title and the lien of this Mortgage thereon against all claims and demands of all persons and entities, subject to the First Mortgage. Mortgagor further warrants that it has the right to mortgage the Mortgaged Property.

2.    Payment of Indebtedness.

Mortgagor will pay the Indebtedness at the times and places and in the manner specified in the Waiver, and in accordance with ERISA.

2

3.     Payment of Taxes and Other Impositions.

(a)     Mortgagor will pay and discharge all taxes of every kind and nature when
due (including, without limitation, all real and personal property, income, franchise, withholding,
transfer, gains, profits and gross receipts taxes), all charges for any easement or agreement
maintained for the benefit of the Mortgaged Property, all general and special assessments, levies,
permits, inspection and license fees, all water and sewer rents and charges and all other public
charges even if unforeseen or extraordinary, which in each case may become a prior lien on any of
the Mortgaged Property, together with any penalties or interest on any of the foregoing (all of the
foregoing are collectively referred to as the "Impositions").  Upon request by Mortgagee,
Mortgagor shall deliver to Mortgagee (i) original or copies of receipted bills and cancelled checks
evidencing payment of any such Imposition if it is a real estate tax or other public charge and (ii)
evidence acceptable to Mortgagee showing the payment of any other such Imposition.  If
permitted under applicable law, at Mortgagor's option, Mortgagor may elect to pay any such
Imposition in installments and shall be responsible for the payment of such installments with
interest, if any.

(b)     Nothing herein shall affect any right or remedy of Mortgagee under this
Mortgage or otherwise, without notice or demand to Mortgagor, to pay any Imposition after the
date such Imposition shall have become due, and to add to the Indebtedness the amount so paid,
together with interest from the time of payment at the rate of prime, plus two percent, per annum
(the "Default Rate").  Any sums paid by Mortgagee in discharge of any Impositions shall be
payable on demand by Mortgagor to Mortgagee together with interest at the Default Rate.

(c)     Mortgagor shall not claim, demand or be entitled to receive any credit or
credits toward the satisfaction of this Mortgage or on any interest payable thereon for any taxes
assessed against the Mortgaged Property or any part thereof, and shall not claim any deduction
from the taxable value of the Mortgaged Property by reason of this Mortgage.

(d)     Mortgagor shall have the right to contest or object in good faith to the
amount or validity of any Imposition by appropriate legal proceedings, but such right shall not be
deemed or construed in any way as relieving Mortgagor's covenant to pay any such Imposition.

(e)     Except during such time as the holder of the First Mortgage is electing
escrow payments on account of Impositions, upon written notice to Mortgagor, Mortgagee after an
Event of Default (as defined below), and during the continuance thereof, shall be entitled to
require Mortgagor to pay monthly in advance to Mortgagee the equivalent of 1/12th of the
estimated annual Impositions.  Mortgagee may commingle such funds with its own funds and
Mortgagor shall not be entitled to interest thereon.  So long as there is no default, these amounts
shall be applied to the payment of the Impositions.  In the event of default, Mortgagor shall have
the right, at its sole option, to apply the funds so held to pay said Impositions.  Any funds applied
against the Impositions shall be applied in the inverse order of the due dates thereof.

4.  <u>Insurance</u>.

(a)     Mortgagor will keep the Mortgaged Property insured for the benefit of Mortgagee, for the Mortgaged Property's full value against all hazards, including loss or damage caused by fire, collision, theft, flood (if applicable) or other casualty. At any time upon Mortgagee's request, Mortgagor shall furnish Mortgagee with evidence indicating that the Property is insured. Mortgagor shall provide Mortgagee with at least thirty (30) days' written notice before such policies are altered or cancelled in any manner.

(b)     If the Mortgaged Property, or any part thereof, shall be destroyed or damaged by fire or any other casualty, whether insured or uninsured, or in the event any claim is made against Mortgagor for any personal injury, bodily injury or property damage incurred on or about the Mortgaged Property, Mortgagor shall give immediate notice thereof to Mortgagee. If the Mortgaged Property is damaged by fire or other casualty, then provided that no Event of Default shall have occurred and be continuing, Mortgagor shall have the right to adjust such loss, and the insurance proceeds relating to such loss may be paid over to Mortgagor; provided that Mortgagor shall, promptly after any such damage, repair all such damage regardless of whether any insurance proceeds have been received or whether such proceeds, if received, are sufficient to pay for the costs of repair. If the Mortgaged Property is damaged by fire or other casualty and an Event of Default shall have occurred and be continuing, subject to the rights of the holder of the First Mortgage, then Mortgagor authorizes and empowers Mortgagee, at Mortgagee's option and in Mortgagee's sole discretion, as attorney-in-fact for Mortgagor, to make proof of loss, to adjust and compromise any claim under any insurance policy, to appear in and prosecute any action arising from any policy, to collect and receive insurance proceeds and to deduct there from Mortgagee's expenses incurred in the collection process. Subject to the rights of the holder of the First Mortgage, each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Mortgagee in the case where an Event of Default has occurred and is continuing. The insurance proceeds or any part thereof received by Mortgagee may be applied by Mortgagee toward reimbursement of all costs and expenses of Mortgagee in collecting such proceeds, and the balance, at Mortgagee's option in its sole and absolute discretion, subject to the rights of the holder of the First Mortgage, to the Indebtedness due or to become due under the Waiver, to fulfill any other obligation of Mortgagor, to the restoration or repair of the property damaged, or released to Mortgagor. In the event Mortgagee elects to release such proceeds to Mortgagor, Mortgagor shall be obligated to use such proceeds to restore or repair the Mortgaged Property. Mortgagee agrees to execute such documents as may be reasonably requested by Mortgagor to permit Mortgagor, prior to an Event of Default, to adjust and collect insurance proceeds.

(c)     In the event of foreclosure of this Mortgage or other transfer of title to the Mortgaged Property in extinguishment of the Indebtedness, and subject to the rights of the holder of the First Mortgage, all right, title and interest of Mortgagor in and to any insurance policies then in force (if not blanket policies) shall pass to the purchaser or grantee and Mortgagor hereby appoints Mortgagee its attorney-in-fact, in Mortgagor's name, to assign and transfer all such policies and proceeds to such purchaser or grantee.

4

5.   <u>Condemnation/Eminent Domain.</u>

Immediately upon obtaining knowledge of any proceeding for the condemnation of the Mortgaged Property, or any portion thereof, Mortgagor will notify Mortgagee of such proceeding. If the First Mortgage is no longer in existence or the holder of the First Mortgage does not elect to do so, Mortgagor authorizes Mortgagee, at Mortgagee's option and in Mortgagee's sole discretion, as attorney-in-fact for Mortgagor, to commence, appear in and prosecute, in Mortgagee's or Mortgagor's name, any proceeding relating to any condemnation of the Mortgaged Property, or any portion thereof, and to settle or compromise any claim in connection with such condemnation. If Mortgagee elects not to participate in such proceeding, then Mortgagor shall, at its expense, diligently prosecute any such proceeding and shall consult with Mortgagee, its attorneys and experts and cooperate with them in any defense of any such proceeding. All awards and proceeds of any condemnation shall, subject to the First Mortgage, be assigned to Mortgagee to be applied first to the payment of Mortgagee's attorneys' fees, legal expenses (to the extent permitted by applicable law) and other costs including appraisal fees, in connection with the condemnation or eminent domain proceedings and then, at the option of Mortgagee, to the payment of the obligations or the restoration or repair of the Mortgaged Property, and Mortgagor agrees to execute any assignments of such awards as Mortgagee may request.

6.   <u>Further Assurances/Estoppel Certificates.</u>

Upon demand of Mortgagee, Mortgagor agrees to do any act or execute any documents (including, but not limited to, security agreements on any personalty included or to be included in the Mortgaged Property and a separate assignment of each Lease in recordable form) as may reasonably be required by Mortgagee to confirm the lien of this Mortgage and all other rights or benefits conferred on Mortgagee.

7.   <u>Mortgagee's Right to Perform.</u>

If Mortgagor fails to perform any of the covenants or agreements of Mortgagor, Mortgagee, without waiving or releasing Mortgagor from any obligation or default under this Mortgage, may, at any time (but shall be under no obligation to), pay or perform the same, and the amount or cost thereof, plus interest at the Default Rate, shall immediately be due from Mortgagor to Mortgagee and the same shall be secured by this Mortgage and shall be a lien on the Mortgaged Property prior to any right, title to, interest in or claim upon the Mortgaged Property attaching subsequent to the lien of this Mortgage. No payment or advance of money by Mortgagee under this Section shall be deemed or construed to cure Mortgagor's default or waive any right or remedy of Mortgagee.

8.    Mortgagor's Existence, etc.

Mortgagor represents and warrants that Mortgagor is a duly organized and validly existing limited liability company in good standing, and this Mortgage has been executed by a duly authorized officer thereof. This Mortgage constitutes the legal, valid and binding obligation of Mortgagor, enforceable against Mortgagor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

9.    Events of Default.

As used herein, an "Event of Default" shall mean:

(a)    the failure by Mortgagor to pay any monetary obligation owed to the Pension Plan when due under the Waiver, this Mortgage or any instrument or agreement which evidences the Indebtedness or pursuant to which the Indebtedness is incurred;

(b)    the default by Mortgagor or MidStates in the performance of any other covenant, obligation, term or condition of the Waiver, this Mortgage or any instrument or agreement which evidences the Indebtedness or pursuant to which the Indebtedness is incurred which is not cured within thirty (30) days after notice thereof to Mortgagor, or such longer period of time as shall be reasonably required for Mortgagor, in the exercise of reasonable diligence, to cure such default;

(c)    the filing by Mortgagor or MidStates of a request or petition for liquidation, reorganization, arrangement, adjustment of debts, adjudication as a bankrupt, relief as a debtor or other relief under the bankruptcy, insolvency or similar laws of the United States or any state or territory thereof or any foreign jurisdiction, now or hereafter in effect; the making of any general assignment by Mortgagor or MidStates for the benefit of creditors; the appointment of a receiver or trustee for Mortgagor or MidStates, or for any assets of Mortgagor or MidStates or, including, without limitation, the appointment of or taking possession by a "custodian", as defined in the Federal Bankruptcy Code; the institution by Mortgagor or MidStates of any other type of insolvency proceeding (under the Federal Bankruptcy Code or otherwise), or of any formal or informal proceeding for the dissolution or liquidation of, settlement of claims against, or winding up of affairs of, Mortgagor or MidStates;

(d)    the sale, assignment, transfer or delivery of all or substantially all of the assets of any obligor of the Indebtedness;

(e)    the occurrence of any "Default" under the First Mortgage, or any other mortgage affecting any part of the Mortgaged Property; or

(f)    if any certificate, statement, representation, warranty or audit, heretofore or

6

hereafter furnished by or on behalf of Mortgagor, pursuant to or in connection with this Mortgage, or otherwise (including, without limitation, representations and warranties contained herein), or as an inducement to Mortgagee to extend any credit to or to enter into any agreement with Mortgagor, MidStates or any guarantor proves to have been false in any material respect at the time as of which the facts therein set forth were stated or, if upon the date of execution of this Mortgage, there shall have been any materially adverse change in any of the facts disclosed by any such certificate, statement, representation, warranty or audit, which change shall not have been disclosed in writing to Mortgagee at or prior to the time of such execution.

     10.   <u>Remedies</u>.

         Upon the occurrence and during the continuance of any Event of Default, in addition to any other rights and remedies Mortgagee may have as provided by law, and without limitation, Mortgagee may immediately take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and the Mortgaged Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such manner as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

         (a)   Mortgagee may, to the extent permitted by applicable law, and subject to the rights of the holder of the First Mortgage (i) institute and maintain an action of foreclosure against all or any part of the Mortgaged Property, (ii) institute and maintain an action for the Indebtedness, (iii) sell all or part of the Mortgaged Property (Mortgagor expressly granting to Mortgagee the power of sale), or (iv) take such other action at law or in equity for the enforcement of this Mortgage. Mortgagee may proceed in any such action to final judgment and execution thereon for all sums due hereunder, together with interest thereon at the Default Rate and all costs of suit, including, without limitation, reasonable attorneys' fees and disbursements. Interest at the Default Rate shall be due on any judgment obtained by Mortgagee from the date of judgment until actual payment is made of the full amount of the judgment.

         (b)   Mortgagee may personally, or by its agents, attorneys and employees and without regard to the adequacy or inadequacy of the Mortgaged Property or any other collateral as security for the Indebtedness, subject to the rights of the holder of the First Mortgage, enter upon the Mortgaged Property and each and every part thereof and exclude Mortgagor and its agents and employees there from without liability for trespass, damage or otherwise (Mortgagor hereby agreeing to surrender possession of the Mortgaged Property to Mortgagee upon demand at any such time) and use, operate, manage, maintain and control the Mortgaged Property and every part thereof. Following such entry and taking of possession, Mortgagee shall be entitled, without limitation, (x) to lease all or any part or parts of the Mortgaged Property for such periods of time and upon such conditions as Mortgagee may, in its discretion, deem proper, (y) to enforce, cancel or modify any Lease and (z) generally to execute, do and perform any other act, deed, matter or thing concerning the Mortgaged Property as Mortgagee shall deem appropriate as fully as Mortgagor might do.

7

(c)      It is further agreed that if default be made in the payment of any part of the Indebtedness, as an alternative to the right of foreclosure for the full secured Indebtedness after acceleration thereof, subject to the rights of the holder of the First Mortgage, Mortgagee shall have the right to institute partial foreclosure proceedings with respect to the portion of said Indebtedness so in default, as if under a full foreclosure, and without declaring the entire secured Indebtedness due (such proceeding being hereinafter referred to as a "partial foreclosure"), and provided that if a partial foreclosure sale is consummated as provided herein, such sale may be made subject to the continuing lien of this Mortgage for the unmatured portion of the secured Indebtedness, but as to such unmatured part, this Mortgage, and the lien hereof, shall remain in full force and effect just as though no partial foreclosure sale had been made under the provisions of this Section.  Notwithstanding the filing of any partial foreclosure or entry of a decree of sale therein, Mortgagee may elect at any time prior to a partial foreclosure sale pursuant to such decree, to discontinue such partial foreclosure and to accelerate the Indebtedness secured hereby by reason of any uncured Event of Default upon which such partial foreclosure was predicated or by reason of any other Events of Default, and proceed with full foreclosure proceedings.  It is further agreed that one or more foreclosure sales may be made pursuant to partial foreclosures without exhausting the right of full or partial foreclosure sale for any unmatured part of the secured Indebtedness, it being the purpose to provide for a partial foreclosure sale of the Indebtedness secured hereby without exhausting the power to foreclose for any other part of the Indebtedness whether matured at the time or subsequently maturing, and without exhausting any right of acceleration and full foreclosure.

11.     <u>Right of Mortgagee to Credit Sale</u>.

Upon the occurrence of any sale made under this Mortgage, whether made under the power of sale or by virtue of judicial proceedings or by a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof.  In lieu of paying cash, Mortgagee may make settlement for the purchase price by crediting upon the Indebtedness or other sums secured by this Mortgage the net sales price after deducting the expenses of sale and the cost of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage.  In such event, this Mortgage, the Waiver and any documents evidencing expenditures secured hereby may be presented to the person or persons conducting the sale so that the amount used or applied may be credited upon the Indebtedness as having been paid.

8

12.   Appointment of Receiver.

Subject to the rights of the holder of the First Mortgage, if an Event of Default shall have occurred and be continuing, Mortgagee as a matter of right and without notice to Mortgagor, unless otherwise required by applicable law, and without regard to the adequacy or inadequacy of the Mortgaged Property or any other collateral as security for the Indebtedness or the interest of Mortgagor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers or other manager of the Mortgaged Property, and Mortgagor hereby irrevocably consents to such appointment and waives notice of any application (except as may be required by law). Any such receiver or receivers shall have all the powers and duties of receivers in similar cases and all the powers and duties of Mortgagee in case of entry as provided in this Mortgage, including, without limitation and to the extent permitted by law, the right to enter into leases of all or any part of the Mortgaged Property, and shall continue as such and exercise all such powers and duties until the date of confirmation of sale of the Mortgaged Property unless such receivership is sooner terminated.

13.   Extension, Release, etc.

(a)   Without affecting the lien or charge of this Mortgage upon any portion of the Mortgaged Property not then or theretofore released as security for the full amount of the Indebtedness, Mortgagee may, from time to time and without notice, agree to (i) release any person liable for the Indebtedness, (ii) extend the maturity or alter any of the terms of the Indebtedness or any guaranty thereof, (iii) grant other indulgences, (iv) release or reconvey, or cause to be released or reconveyed at any time at Mortgagee's option any parcel, portion or all of the Mortgaged Property, (v) take or release any other or additional security for any obligation herein mentioned, or (vi) make compositions or other arrangements with debtors in relation thereto.

(b)   No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect the lien of this Mortgage or any liens, rights, powers or remedies of Mortgagee hereunder.

(c)   If Mortgagee shall have the right to foreclose this Mortgage, Mortgagor authorizes Mortgagee at its option to foreclose this Mortgage subject to the rights of any tenants of the Mortgaged Property. The failure to make any tenant a defendant to any foreclosure proceeding and to foreclose their rights will not be asserted by Mortgagor as a defense to any proceeding instituted by Mortgagee to collect the Indebtedness or to foreclose this Mortgage.

(d)   Unless expressly provided otherwise, if ownership of this Mortgage and title to the Mortgaged Property or any estate therein shall become vested in the same person or entity, this Mortgage shall not merge in such title but shall continue as a valid lien on the Mortgaged Property for the amount secured hereby.

9

14.    <u>Interference with Leases and Other Agreements.</u>

Mortgagor shall not take or fail to take any action which may cause or permit the termination or the withholding of any payment in connection with any lease or other agreement ("Agreement") pertaining to the Mortgaged Property. In addition, Mortgagor without Mortgagee's prior written consent shall not: (a) collect any monies payable under any Agreement more than one month in advance; (b) modify any Agreement; (c) assign or allow a lien, security interest or other encumbrance to be placed upon Mortgagee's rights, title and interest in and to any Agreement or the amount payable there under; or (d) terminate or cancel any Agreement except for the nonpayment of any sum or other material breach by the other party thereto. If Mortgagor receives at any time any written communication asserting a default by Mortgagor under an Agreement or purporting to terminate or cancel any Agreement, Mortgagor shall promptly forward a copy of such communication (and any subsequent communications relating thereto) to Mortgagee.

15.    <u>Collection of Indebtedness from Third Party.</u>

Mortgagee shall be entitled to notify or require Mortgagor to notify any third party (including, but not limited to, lessees, licensees, governmental authorities and insurance companies) to pay Mortgagor any indebtedness or obligation owing to Mortgagor with respect to the Mortgaged Property (cumulatively, "Property Debt") whether or not a default exists under this Mortgage. Mortgagor shall diligently collect the Property Debt owing to Mortgagor from these third parties until the giving of such notification. In the event that Mortgagor possesses or receives possession of any instrument or other remittances with respect to the Property Debt following the giving of such notification or if the instruments or other remittances constitute the prepayment of any Property Debt or the payment of any insurance or condemnation proceeds, Mortgagor shall hold such instruments and other remittances for Mortgagee, and immediately provide Mortgagee with possession of the instruments and other remittances. Mortgagor shall be entitled, but not required to collect (by legal proceedings or otherwise), extend the time for payment, compromise, exchange or release any obligor or collateral upon, or otherwise settle any of the Property Debt whether or not an event of default exists under this Agreement. Mortgagee shall not be liable to Mortgagor for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting there from.

16.    <u>Assignment of Rents.</u>

Mortgagor hereby assigns to Mortgagee, subject and subordinate to any assignment of rents contained in the First Mortgage and the rights of the holder of the First Mortgage with respect thereto, any rents as further security for the payment of the Indebtedness, and Mortgagor grants to Mortgagee, subject and subordinate to any assignment of rents contained in the First Mortgage and the rights of the holder of the First Mortgage with respect thereto, the right to enter the Mortgaged Property to collect the same. to let the Mortgaged Property or any part thereof, and to apply the rents on account of the Indebtedness. The foregoing assignment and grant shall continue in effect until this Mortgage is released, but Mortgagee hereby waives the right to enter

the Mortgaged Property for the purpose of collecting the rents and Mortgagor shall be entitled to collect, receive, use and retain the rents until the occurrence of an Event of Default under this Mortgage; such right of Mortgagor to collect, receive, use and retain the rents may be revoked by Mortgagee upon the occurrence and during the continuance of any Event of Default under this Mortgage by giving not less than five days' written notice of such revocation to Mortgagor; in the event such notice is given, Mortgagor shall pay over to Mortgagee, or to any receiver appointed to collect the rents, any lease security deposits, and shall pay monthly in advance to Mortgagee, or to any such receiver, the fair and reasonable rental value as determined by Mortgagee for the use and occupancy of the Mortgaged Property or of such part thereof as may be in the possession of Mortgagor or any affiliate of Mortgagor, and upon default in any such payment Mortgagor and any such affiliate will vacate and surrender the possession of the Mortgaged Property to Mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings or otherwise. Mortgagor shall not accept prepayments of installments of Rent to become due for a period of more than one month in advance (except for security deposits and estimated payments of percentage rent, if any).

      17.    <u>Use and Maintenance of Property.</u>

      Mortgagor shall take all actions and make any repairs necessary to maintain the Mortgaged Property in good condition. Mortgagor shall not commit or permit any waste to be committed with respect to the Mortgaged Property. Mortgagor shall use the Mortgaged Property solely in compliance with applicable law and any insurance policies concerning the Mortgaged Property. Mortgagor shall not make any alterations, additions or improvements to the Mortgaged Property without Mortgagee's prior written consent. Without limiting the foregoing, all alterations, additions, and improvements made to the Mortgaged Property shall be subject to the Mortgagee's interest in the Mortgaged Property, shall not be removed without Mortgagee's prior written consent, and shall be made at Mortgagor's sole expense.

      18.    <u>Loss or Damage.</u>

      Mortgagor shall bear the entire risk of any loss, theft, destruction or damage (cumulatively "Loss" or "Damage") to the Mortgaged Property or any portion thereof. In the event of any Loss or Damage, Mortgagor shall at the option of Mortgagee repair the affected Mortgaged Property.

11

19.   <u>Zoning and Private Covenants.</u>

Mortgagor shall not initiate or consent to any change in the zoning provisions or private covenants affecting the use of the Mortgaged Property without Mortgagee's written consent. If Mortgagor's use of the Mortgaged Property becomes a nonconforming use under any zoning provision, Mortgagor shall not cause or permit such use to be discontinued or abandoned without the written consent of Mortgagor. Mortgagor will immediately provide Mortgagee with written notice of any proposed changes to the zoning provisions or private covenants affecting the Mortgaged Property.

20.   <u>Trust Funds.</u>

All lease security deposits of the Mortgaged Property shall be treated by Mortgagor as trust funds and Mortgagor shall not commingle such funds with any other funds. Within 10 days after request by Mortgagee, Mortgagor shall furnish Mortgagee satisfactory evidence of compliance with this subsection, together with a statement of all lease security deposits by lessees and copies of all leases not previously delivered to Mortgagee.

21.   <u>Notices.</u>

All notices, requests, demands and other communications required or permitted to be given hereunder shall be in writing and shall be given by personal service, by delivering the same to a recognized express delivery service, or by depositing the same in the United States mail, certified, return receipt requested, postage prepaid, and addressed as follows:

To Mortgagee:

        Pension Benefit Guaranty Corporation
        Office of the Chief Counsel
        1200 K Street, N.W., Suite 340
        Washington, D.C. 20005-4026

with a copy to:

        Pension Benefit Guaranty Corporation
        Department of Insurance Supervision & Compliance
        1200 K Street, N.W., Suite 270
        Washington, D.C. 20005-4026

To Mortgagor:

Hartmann Properties, LLC
540 W. Galena Blvd.
Aurora, IL 60506
Attention: Bruce E. Hartmann

22.   No Modifications or Waivers.

(a)  This Mortgage is absolute and unconditional and shall not be changed or
affected by any representation, oral agreement, act or thing whatsoever, except as herein provided.
This Mortgage is intended by Mortgagor to be the final, complete and exclusive expression of the
agreement between Mortgagor and Mortgagee.  No modification or amendment of any provision
of this Mortgage shall be effective unless in writing, which writing shall make specific reference
to this Mortgage and shall be signed by a duly authorized officer of Mortgagee and Mortgagor.

(b)  No course of dealing between Mortgagor and Mortgagee and no act, delay or
omission by Mortgagee in exercising any right or remedy hereunder, including, without limitation,
acceptance of any partial payment on the Indebtedness, shall operate as a waiver of any right,
remedy or default hereunder, or of any other right or remedy, and no single or partial exercise of
any right or remedy shall preclude any other or further exercise thereof or the exercise of any other
right or remedy.  All rights and remedies of Mortgagee hereunder are cumulative.

23.   Severability.

If any provision of this Mortgage violates the law or is unenforceable, the rest of
the Mortgage shall continue to be valid and enforceable.

24.   Waiver of Right of Redemption and Other Rights.

(a)  Mortgagor and each person or entity owning a direct or indirect interest in the
Mortgagor (each such person or entity, a "Beneficial Owner") hereby voluntarily and knowingly
releases and waives any and all rights to retain possession of the Mortgaged Property after the
occurrence of an Event of Default hereunder and any and all rights of redemption from sale under
any order or decree of foreclosure (whether full or partial), pursuant to rights therein granted, as
allowed under Section 15-1601(b) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101
et seq.), as amended from time to time, on its own behalf, on behalf of all persons claiming or
having an interest (direct or indirectly) by, through or under each constituent of Mortgagor and on
behalf of each and every person acquiring any interest in the Mortgaged Property subsequent to
the date hereof, it being the intent hereof that any and all such rights of redemption of each
constituent of Mortgagor and all such other persons are and shall be deemed to be hereby waived
to the fullest extent permitted by applicable law or replacement statute.

(b)     To the extent permitted by law, Mortgagor waives the benefit of all laws

13

now existing or that may subsequently be enacted providing for (i) any appraisement before sale of any portion of the Mortgaged Property, (ii) any extension of the time for the enforcement of the collection of the Indebtedness or the creation or extension of a period of redemption from any sale made in collecting such debt and (iii) exemption of the Mortgaged Property from attachment, levy or sale under execution or exemption from civil process. To the extent Mortgagor may do so, Mortgagor will not insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, exemption, extension or redemption, or requiring foreclosure of this Mortgage before exercising any other remedy granted hereunder and Mortgagor, for Mortgagor and its successors and assigns, and for any and all persons ever claiming any interest in the Mortgaged Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the secured indebtedness and marshalling in the event of foreclosure of the liens hereby created.

25.    <u>Remedies Not Exclusive.</u>

Mortgagee shall be entitled to enforce payment of the Indebtedness and to exercise all rights and powers under this Mortgage or under the Waiver, ERISA or any laws now or hereafter in force, notwithstanding some or all of the Indebtedness may now or hereafter be otherwise secured, whether by mortgage, security agreement, pledge, lien, assignment or otherwise. Neither the acceptance of this Mortgage nor its enforcement, shall prejudice or affect Mortgagee's right to enforce any other security now or hereafter held by Mortgagee, it being agreed that Mortgagee shall be entitled to enforce this Mortgage and any other security now or hereafter held by Mortgagee in such manner as Mortgagee may determine. No remedy herein conferred upon or reserved to Mortgagee is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. In no event shall Mortgagee, in the exercise of the remedies provided in this Mortgage (including, without limitation, in connection with the assignment of Rents to Mortgagee, or the appointment of a receiver and the entry of such receiver on to all or any part of the Mortgaged Property), be deemed a "mortgagee in possession," and Mortgagee shall not in any way be made liable for any act, either of commission or omission, in connection with the exercise of such remedies.

26.    <u>Mortgagor's Right to Commence or Defend Legal Actions.</u>

Mortgagor shall immediately provide Mortgagee with written notice of any actual or threatened action, suit or other proceeding affecting the Mortgaged Property. Mortgagor hereby appoints Mortgagee as its attorney-in-fact to compromise, intervene in, and defend such actions, suits, or other legal proceedings and to compromise or settle any claim or controversy pertaining thereto, if the First Mortgage no longer exists or the holder of the First Mortgage declines such appointment. Mortgagee shall not be liable to Mortgagor for any action, error, mistake, omission or delay pertaining to the actions described in this paragraph or any damages resulting there from. Nothing contained herein will prevent Mortgagee from taking the actions described in this paragraph in its own name. Mortgagor shall cooperate and assist Mortgagee in any action

14

R2007-02083

hereunder.

      27.   <u>Expenses; Indemnification</u>.

      (a)    If (i) any action or proceeding shall be commenced by Mortgagee (including but not limited to any action to foreclose this Mortgage or to collect the Indebtedness), or any action or proceeding is commenced to which Mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this Mortgage (including, without limitation, any proceeding or other action relating to the bankruptcy, insolvency or reorganization of Mortgagor or any other obligor under the Waiver or ERISA), or in which Mortgagee is served with any legal process, discovery notice or subpoena and (ii) in each of the foregoing instances such action or proceeding in any manner relates to or arises out of this Mortgage or acceptance of a guaranty from a guarantor of the Indebtedness or any of the transactions contemplated by this Mortgage, then Mortgagor will, within ten (10) days after demand therefore, immediately reimburse or pay to Mortgagee all of the expenses which have been or may be incurred by Mortgagee with respect to the foregoing (including reasonable attorney's fees and expenses), together with interest thereon at the Default Rate, and any such sum and the interest thereon shall be a lien on the Mortgaged Property, prior to any right, or title to, interest in or claim upon the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage. In any action or proceeding to foreclose this Mortgage, or collect the Indebtedness, the provisions of law respecting the recovering of costs, disbursements and allowances shall prevail unaffected by this covenant.

      (b)    Mortgagor shall indemnify and hold harmless Mortgagee and its directors, officers, agents and employees from and against all claims, damages, losses and liabilities (including, without limitation, reasonable attorney's fees and expenses) arising out of or based upon any matter related to this Mortgage, the Mortgaged Property or the occupancy, ownership, maintenance or management of the Mortgaged Property by Mortgagor, including, without limitation, any claims based on the alleged acts or omissions of any employee or agent of Mortgagor. This indemnification shall be in addition to any other liability which Mortgagor may otherwise have to Mortgagee.

      (c)    Mortgagor's obligation to indemnify Mortgagee and/or its directors, officers, agents and employees shall survive the termination, release or foreclosure of this Mortgage.

28.   Successors and Assigns.

All covenants of Mortgagor contained in this Mortgage are imposed solely and exclusively for the benefit of Mortgagee and its successors and assigns, and no other person or entity shall have standing to require compliance with such covenants or be deemed, under any circumstances, to be a beneficiary of such covenants, any or all of which may be freely waived in whole or in part by Mortgagee at any time if in its sole discretion it deems such waiver advisable. All such covenants of Mortgagor shall run with the land and bind Mortgagor, the successors and assigns of Mortgagor (and each of them) and all subsequent owners, encumbrances and tenants of the Mortgaged Property, and shall inure to the benefit of Mortgagee, its successors and assigns. Mortgagee shall not transfer this Mortgage to any person or entity other than another governmental entity or quasi-governmental entity.

29.   Governing Law, etc.

This Mortgage shall be governed by and construed in accordance with the laws of the State in which the Premises are located, except that Mortgagor expressly acknowledges that the Waiver and the obligation to pay and/or perform the Indebtedness shall be governed and construed in accordance with the laws of the State of Illinois, except to the extent preempted by ERISA, and for purposes of consistency, Mortgagor agrees that in any *in personam* proceeding related to this Mortgage, the rights of the parties to this Mortgage shall also be governed by and construed in accordance with the laws of the State of Illinois, except to the extent preempted by federal law, governing contracts made and to be performed in that jurisdiction.

30.   **WAIVER OF TRIAL BY JURY.**

**MORTGAGOR AND MORTGAGEE EACH HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY ACTION, CLAIM, SUIT OR PROCEEDING RELATING TO THIS MORTGAGE AND FOR ANY COUNTERCLAIM BROUGHT THEREIN. MORTGAGOR HEREBY WAIVES ALL RIGHTS TO INTERPOSE ANY COUNTERCLAIM IN ANY SUIT BROUGHT BY MORTGAGEE HEREUNDER AND ALL RIGHTS TO HAVE ANY SUCH SUIT CONSOLIDATED WITH ANY SEPARATE SUIT, ACTION OR PROCEEDING.**

31.   Certain Definitions.

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage shall be used interchangeably in singular or plural form and the word "Mortgagor" shall mean "each Mortgagor or any subsequent owner or owners of the Mortgaged Property or any part thereof or interest therein," the word "person" shall include any individual, corporation, partnership, trust, unincorporated association, government, governmental authority, or other entity, and the words "Mortgaged Property" shall include any portion of the Mortgaged Property or interest therein. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter

16

forms, and the singular form of nouns and pronouns shall include the plural and vice versa. The captions in this Mortgage are for convenience or reference only and do not limit or amplify any provisions herein.

32.  Satisfaction.

Upon the later of  (a) the last day of the plan year in which payment in full was made of the Waiver Balance or (b) the day on which a payment is made pursuant to Section 302(c)(10) of ERISA to the Plan which satisfies the indebtedness owed under the Waiver, Mortgagee will execute and deliver to Mortgagor those documents that may be required to release this Mortgage of record. Except as prohibited by law, Mortgagor shall pay all costs of recordation.

33.  Application of Foreclosure Proceeds.

The proceeds from the foreclosure of this Mortgage and the sale of the Mortgaged Property shall be applied in the following manner: first, to the payment of any sheriff's fee and the satisfaction of its expenses and costs; then to reimburse Mortgagee for its expenses and costs of the sale or in connection with securing, preserving and maintaining the Property, seeking or obtaining the appointment of a receiver for the Property, (including, but not limited to, attorneys' fees, legal expenses, filing fees, notification costs, and appraisal costs); then to the payment of the Indebtedness; and then to any third party as provided by law.

34.  Collection Costs.

If Mortgagee hires an attorney to collect any amount due or to enforce any right or remedy under this Mortgage, Mortgagor agrees to pay Mortgagee's reasonable attorneys' fees and costs.

35.  Successors and Assigns.

This Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees and devises.

36.  Compliance with Illinois Mortgage Foreclosure Law.

(a)  In the event that any provision in this Mortgage shall be inconsistent with any provision of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.*), as amended from time to time (herein called the "Act"), the provisions of the Act shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provision of this Mortgage that can be construed in a manner consistent with the Act.

(b)  If any provision of this Mortgage shall grant to Mortgagee any rights or

17

remedies upon default by the Mortgagor which are more limited than the rights that would otherwise be vested in Mortgagee under the Act in the absence of said provision of this Mortgage, Mortgagee shall be vested with the rights granted in the Act to the full extent permitted by law.

(c)  Without limiting the generality of the foregoing, all expenses incurred by Mortgagee to the extent reimbursable under Section 15-1510 and 15-1512 of the Act, whether incurred before or after any decree or judgment of foreclosure, and whether or not enumerated in this Mortgage, shall be added to the Indebtedness secured by this Mortgage or by the judgment of foreclosure.  Further, Mortgagor acknowledges that the Mortgaged Property does not contain agricultural real estate, as said term is defined in Section 15-1201 of the Act or residential real estate, as said term is defined in Section 15-1219 of the Act.

**THEREFORE,** this Mortgage constitutes a lien upon the Premises in the Principal Amount in lawful money of the United States, which is payable pursuant to sections 306 and 302(a) of ERISA, and the terms of the Waiver, in favor of Mortgagee and securing the Indebtedness.

This Mortgage has been duly executed by Mortgagor on the date first above written.

HARTMANN PROPERTIES, LLC

By: _____

Name: _____

Title: _____

18

R2007-02083

STATE OF ILLINOIS      )
                       : ss.:
COUNTY OF KANE         )


I, Mary M. Hartmann, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that Bruce Hartmann who is personally known to me to be a Manager of Hartman Properties, LLC, an Illinois limited liability company, and the same person whose name is subscribed in the foregoing instrument, appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, as the free and voluntary act of said company for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this 15th day of January, 2007.


Notary Public


My Commission Expires:

1/7/08

[Notarial Stamp]

OFFICIAL SEAL
MARY M HARTMANN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/07/08

19

Schedule A

Description of the Premises

[Attach Legal Description of all parcels]

20

Parcel No. 1.

That part of the South Half of Section 31, Township 34 North, Range 1, East of the Third Principal Meridian, lying East of center line of the Peru and Grand Detour Plank Road, described as follows: Commencing at the Southeast corner of the Southeast Quarter of said Section 31; thence North 00 degrees 27 minutes 00 seconds East along the East line of said Southeast Quarter of Section 31 for a distance of 662.05 feet to the point of beginning; thence due West for a distance of 2367.16 feet; thence North 31 degrees 03 minutes 43 seconds West for a distance of 424.37 feet; thence South 89 degrees 54 minutes 30 seconds West for a distance of 546.44 feet; thence South 57 degrees 17 minutes 00 seconds West for a distance of 100.00 feet to the center line of the aforementioned Peru and Grand Detour Plank Road; thence North 32 degrees 43 minutes 00 seconds West along center line of the Peru and Grand Detour Plank Road for a distance of 182.74 feet; thence North 89 degrees 54 minutes 30 seconds East for a distance of 669.17 feet to the West line of the Southeast Quarter of said Section 31; thence North 00 degrees 38 minutes 00 seconds East along the West line of the Southeast Quarter of said Section 31 for a distance of 433.50 feet; thence North 89 degree 56 minutes 00 seconds East for a distance of 2648.57 feet to the East line of the Southeast Quarter of said Section 31; thence South 00 degrees 27 minutes 00 seconds West along the East line of the Southeast Quarter of said Section 31 for a distance of 900.00 feet to the Point of Beginning, EXCEPTING therefrom that portion conveyed to the County of LaSalle as Document No. 596481.

Parcel No. 2.

A non-exclusive easement for drainage purposes for the benefit of Parcel No. 1 as created by agreement between Mary A. Kaczynski and Pearl Bonucci and Consolidated Freightways Corporation of Delaware dated 3 May, 1979 and recorded 9 July, 1979 as document no. 673028, described as follows:
That part of the South Half of Section 31, Township 34 North, Range 1, East of the Third Principal Meridian, lying East of the center line of the Peru and Grand Detour Plank Road described as follows:
.    . Commencing at the Southeast corner of the Southeast Quarter of said Section 31; thence North 00 degrees 27 minutes 00 seconds East along the East line of the Southeast Quarter of said Section 31 for a distance of 443.00 feet; thence due West for a distance of 2257.91 feet; thence South 00 degrees 23 minutes 30 seconds West for a distance of 221.54 feet; thence South 85 degrees 42 minutes 00 seconds West for a distance of 407.66 feet to the Northeasterly right of way line of the aforesaid Plank Road; thence North 32 degrees 07 minutes 30 seconds West along said Northeasterly right of way line for a distance of 13.00 feet to an existing concrete right of way marker; thence South 60 degrees 10 minutes 00 seconds West for a distance of 62.50 feet to the center line of the aforementioned Plank Road; thence North 32 degrees 43 minutes 00 seconds West along said center line of the Plank Road for a distance of 903.08 feet; thence North 57 degrees 17 minutes 00 seconds East for a distance of 34.49 feet to a point on the aforesaid Northeasterly right-of-way line of the Plank Road which point is the Point of Beginning; continuing thence North 57 degrees 17 minutes 00 seconds East for a distance of 65.51 feet; thence North 89 degrees 54 minutes 30

seconds East for a distance of 27.00 feet; thence South 57 degrees 17 minutes 00
seconds West for a distance of 50 feet; thence South 17 degrees 51 minutes 41 seconds
West for a distance of 49.51 feet to the point on the aforesaid Northeasterly
right-of-way line of the Plank Road; thence North 32 degrees 43 minutes 00 seconds
West along said Northeasterly right-of-way line for a distance of 46.00 feet to the
Point of Beginning; all situated in Dimmick Township;

ALL SITUATED IN LA SALLE COUNTY, ILLINOIS.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITIZENS FIRST NATIONAL BANK, | ) | |
| A National Banking Association | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARTMANN PROPERTIES, LLC | ) | |
| An Illinois Limited Liability Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| And | ) | No. 08 C 1642 |
| | ) | |
| PENSION BENEFIT | ) | |
| GUARANTY CORPORATION, A | ) | |
| Government Corporation, | ) | |
| | ) | |
| | ) | |
| Cross-Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| HARTMAN PROPERTIES, LLC, | ) | |
| An Illinois Limited Liability Company; | ) | |
| CONSOLIDATED FREIGHTWAYS | ) | |
| CORPORTATION OF DELAWARE, | ) | |
| A Delaware Corporation; MID-STATES | ) | |
| EXPRESS, INC., An Illinois Corporation; | ) | |
| UNKNOWN OWNERS and | ) | |
| NON-RECORD CLAIMANTS, | ) | |
| | ) | |
| Cross-Defendants. | ) | |

## NOTICE OF FILING

TO:  SEE ATTACHED SERVICE LIST

PLEASE TAKE NOTICE that on March 26, 2008, the Pension Benefit Guaranty

Corporation filed with the United District Court of the Northern District of Illinois, Illinois, its

Cross-claim in the above-entitled cause of action.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: /s/ Joel R. Nathan
    JOEL NATHAN
    Assistant United States Attorney
    219 S. Dearborn Street
    Chicago, Illinois  60604
    (312) 353-8449
    Attorney No. 2019566

## CERTIFICATE OF SERVICE

       The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document: **CROSS-CLAIM OF THE PENSION BENEFIT GUARANTY CORPORATION,** was served pursuant to the district court's ECF system as to ECF filers, if any, and weas sent by first-class mail on March 27, 2008, to the following non-ECF filers:

Timothy J. Howard
Frank W. Ierulli
Howard & Howard Attorneys, P.C.
211 Fulton St., Suite 600
Peoria, IL 61602

Hartmann Properties LLC
c/o Thomas J. Streit
1999 W. Downer Place. #101
Aurora, IL 60506

Consolidated Freightways Corporation of Delaware
c/o Prentice Hall Corporation, Registered Agent
33 N. LaSalle St.
Chicago, IL 60602

Mid-States Express, Inc.
c/o Thomas J. Streit
1999 W. Downer Place
Aurora, IL 60506

.

       /s/ Joel Nathan
       JOEL NATHAN_____
       Assistant United States Attorney

**Comment [1]:** Of course, if only one document is served, so indicate and change "were" to "was" in the next line.